UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No.: 8:18-cr-257-T-36TGW

KIRK DAVID BLANK
_____

**ORDER**

This cause comes before the Court upon Defendant Kirk David Blank's Motion to Suppress Statements and for an Evidentiary Hearing (Doc. 21), and the United States of America's response thereto (Doc. 23). The Defendant requests that the Court suppress statements made on December 13, 2017, at his place of employment, Munce Marketing Group, 200 West Bay Drive, Largo, FL. The Court held an evidentiary hearing on August 14, 2018, during which Special Agent Ethan Cumming testified on behalf of the Government, and Blank testified on his own behalf. The Court, having considered the motion, testimony of the witnesses, argument of cunsel, and being fully advised in the premises, will deny Blank's motion to suppress.

**I.  FINDINGS OF FACT[1]**

The Tampa division of the Federal Bureau of Investigation ("FBI") became aware that an individual was engaged in trading child pornography on the internet, which traced to a business in Largo, Florida, Munce Marketing Group ("Munce"). Tr. 6:4-11, 48:9-10. Defendant Kirk David Blank was the president of Munce, and the primary suspect of the investigation. *Id.* at 21:3-7, 48:9-12. Special Agent Ethan Cumming, the case agent on the matter, obtained a search warrant

---

[1] The Court has determined the facts based on the testimony of witnesses and exhibits offered into evidence at the hearing held on August 14, 2018. Where conflicting evidence was presented, the Court weighed the credibility of the witnesses, and found Special Agent Cumming to be more credible.

for the Munce office that authorized a search for evidence of possession, distribution, or receipt of child pornography. *Id.* at 6:19-7:6. Cumming, along with at least seven other law enforcement personnel, executed the search warrant on December 13, 2017. *Id.* at 7:14-15, 23:25-24:5, 40:16-22. The team included at least two other special agents, FBI forensic personnel, and at least two officers from the Largo Police Department. *Id.* at 24:6-25.

The team entered the business wearing protective FBI vests, with their guns visible on their waists. *Id.* at 8:17-22, 9:15-20, 23:8-12, 25:11-18. After entering, Cumming, along with two to three other law enforcement personnel, proceeded to Blank's office. *Id.* at 8:17-9:5, 49:20-22. Blank was in his office that morning checking mail and e-mail when he suddenly became aware of his office filling with officers, guns, badges, and vests. *Id.* at 48:19-22, 49:16-17.

Upon entering Blank's office, Cumming identified himself, indicated that law enforcement was there to execute a search warrant, and requested that Blank stand up from his computer, which he did out of concern for preserving digital evidence. *Id.* at 9:2-5. Blank was patted down to search for weapons and drugs while facing the wall with his hands against it, following which he was instructed to, and did, turn around so that an agent could pat down his front side. *Id.* at 26:7-24, 50:5-21. At least four law enforcement officers were in Blank's office at this point, and he was aware of others just outside of his office. *Id.* at 50:25-51:4.

Blank recalled Cumming asking him if he knew why law enforcement was there, and Blank indicated that he was not sure. *Id.* at 51:9-15. Blank guessed that they came in connection with the purchase of a business, but Cumming advised him that was not the reason, and asked whether Blank could think of any other cause. *Id.* at 51:16-18. Shortly thereafter, Cumming advised Blank that law enforcement was there in connection with a child pornography investigation. *Id.* at 62:14-16.

Cumming's and Blank's testimony varies slightly at this point. Cumming testified that he asked Blank whether he was willing to speak with him. Blank recalls that Cumming forcefully stated that Blank needed to speak with them, although Blank could not specifically recall what words Cumming used. *Id.* at 10:6-8, 51:19-25, 62:21-63:2. Blank testified that Cumming made "an implication" that Blank "had to carry on a conversation." *Id.* at 83:10-15. Blank then suggested that the conference room was a location where they could speak, which he chose because he was unsure of how many agents would be present and it was the room that could accommodate the most people, and because of "the activity that was in the office . . . ." *Id.* at 52:1-5, 63:5-11. Blank and Cumming walked side-by-side to the conference room, followed by Special Agent Jason Shearn and two other officers. *Id.* at 63:20-23. Upon arriving at the conference room, Cumming and Shearn replaced their protective vests with suit jackets, their guns holstered at their sides. *Id.* at 10:14-21.

Prior to beginning the interview in the conference room, Blank had not been advised that he had the right to terminate the interview at any point and he testified that he did not believe he had the right to terminate the interview at that point, or that he had the right to remain silent. *Id.* at 52:12-21. He came to this belief based on "[t]he guns, the badges, the vests." *Id.* at 52:24.

The conference room had one entrance and contained a conference table surrounded by six chairs. Doc. 32-1. Blank, Cumming, and Shearn entered the conference room, and when Cumming gestured for Blank to sit, Blank sat at a chair on the opposite side of the room from the door, leaving the seat on his immediate right, and closer to the doorway, open. Tr. 13:4-6, 14:25-15:5. Cumming sat in the seat immediately to the right of Blank, and Shearn sat across the table from Cumming, placing the two special agents between Blank and the doorway. *Id.* at 64:26-25:5. From his vantage point during the interview, Blank could see both Cumming's and Shearn's

3

weapons. *Id.* at 65:21-66:4. The door remained open for the beginning of the interview, and Blank observed two law enforcement personnel outside of the doorway. *Id.* at 65:4-10. Shortly into the interview, however, Blank requested that the door be shut for privacy because Cumming was using a voice inconsistent "with a conference room conversation" that "stress[ed] certain points" but Cumming did not rise to the level of shouting. *Id.* at 53:20-23, 65:11-13, 82:2-3, 82:22-24.

After arriving at the conference room, and before the interview began, Cumming told Blank that he was not under arrest, he was free to leave at any time, and the interview was completely voluntary. *Id.* at 15:24-16:1. Blank confirmed that the agents told him that he was not under arrest. *Id.* at 68:25-69:2, 70:23, 79:1-3. Additionally, Blank testified that he "remember[ed] something vaguely associated with" Cumming telling Blank that he was free to leave, but that the statement was "contradicted by the guns, the badges, the vests" and he did not feel free to leave because Cumming and Shearn "made it very forceful that [Blank] must talk to them . . . ." *Id.* at 70:11-13, 71:8-12. Blank also could not "recall the specific words" regarding being told that the interview was voluntary and testified that he "was told that [he] needed to talk to [the agents] and [he] did not feel as though it was voluntary at all." *Id.* at 72:4-8. Blank explained that he was "rattled" by "seeing several armed agents with vests and badges," and by being searched, which made him feel as though he had no choice regarding being interviewed. *Id.* at 72:12-18.

Blank never indicated a desire to end the interview, which lasted between two and a half to three hours. *Id.* at 16:6-15, 57:6-9; Doc. 32-4. At no point did Cumming or Shearn advise Blank that he had the right to remain silent or the right to counsel. Tr. 28:1-18. Blank did not feel that he was free to go, or that he would be permitted to leave the premises if he asked to do so. Blank felt that he was required to remain and answer the special agents' questions. *Id.* at 54:5-17.

During the interview, Cumming and Shearn did not raise their voices and the tone of the interview was calm. *Id.* at 17:4-19, 53:22-23, 74:2-5. Neither special agent was aggressive during the interview, nor did they force Blank to answer any questions. *Id.* at 74:2-15. Neither agent used their weapon in any way, nor did they make any reference to or draw attention to their weapons in any way. *Id.* at 67:13-68:15. The guns were never removed from their holsters.

At some point during the interview, Blank was allowed to use the restroom, and two officers wearing protective vests accompanied him to the restroom, one walking next to him, and one behind him. *Id.* at 18:19-19:4, 54:25-55:10. When they arrived at the restroom, Blank was advised that an officer would accompany him into the facility and the officer stood next to Blank at the urinal. *Id.* at 55:11-15, 56:5-8. The officers accompanied Blank back to the conference room in the same fashion as they had on the way there. *Id.* at 56:12-16. Later during the interview, Blank became hungry and asked whether he could retrieve a candy bar from his office. *Id.* at 59:2-5. One of the officers indicated that Blank should stay in the conference room and the officer brought Blank the candy bar from his office. *Id.* at 59:8-13.

At the evidentiary hearing, Cumming explained that it is standard FBI operating procedure to accompany individuals within a search location, even to the restroom, when executing a search warrant to ensure preservation of evidence and safety of the officers and other occupants of the location. *Id.* at 19:4-12; 42:17-43-6. He indicated that individuals present at a search scene are monitored, but their movement is not restricted. *Id.* at 19:6-12. Cumming also clarified that although Blank was free to leave the scene entirely, he would have been escorted to the exit because individuals present at a search scene are monitored at all times. *Id.* at 42:4-14.

During the interview, Cumming stated to Blank that it was "very important that [Blank] was completely honest with [the agents]," at which point Blank "took a moment and appeared to

5

be thinking to himself" before disclosing "all of the rest of the facts of the case." Blank made several admissions during the interview. Ultimately, Blank provided Cumming with a consent to use his online identity and consent to use his passwords for his mobile web-based applications. *Id.* at 35:23-36:2.

At the end of the interview, Blank asked "what happens next," and Cumming advised him that he was not sure. *Id.* at 79:25-80:2. Ultimately, Blank left the property, but before leaving, Cumming advised Blank that Blank's landlord was evicting him from the property and would send his personal items to him. *Id.* at 7-13. Blank was not restrained during the execution of the search warrant or during the interview. Blank was arrested approximately six months after the interview, on June 1, 2018. *Id.* at 18:13-15. Blank is charged in an Indictment (Doc. 1) with two counts of transporting child pornography in violation of 18 U.S.C. §§ 2252(a)(1), (b)(1), and 2 and one count of access with intent to view child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2).

## II. ANALYSIS

In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination," which is protected by the Fifth Amendment to the United States Constitution. To that end, the Supreme Court directed that "unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it," then before any custodial interrogation occurs, "the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or

appointed." *Id.* The Court explained that a custodial interrogation occurs when there is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*

A custodial setting exists outside of an arrest if there is a restraint of freedom of movement 'of the degree associated with a formal arrest.' " *United States v. Muegge*, 225 F.3d 1267, 1270 (11th Cir. 2000) (quoting *Minnesota v. Murphy*, 465 U.S. 420, 430 (1984)). The *Miranda* warnings are required under such circumstances because a "custodial setting is thought to contain 'inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely.' " *Murphy*, 465 U.S. at 430 (quoting *Miranda*, 384 U.S. at 467). Whether a custodial setting exists is determined by an objective test of "how a reasonable man in the suspect's position would have understood his situation." *Muegge*, 225 F.3d at 1270 (quoting *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984)). The actual or subjective beliefs of the defendant and the interviewing officer on the issue of whether the defendant is free to leave are irrelevant. *United States v. Moya*, 74 F.3d 1117, 1119 (11th Cir. 1996). A person is in custody if it is "evident that, under the totality of the circumstances, a reasonable man in the suspect's position would feel a restraint on his freedom of movement fairly characterized as that 'degree associated with a formal arrest' to such extent that he would not feel free to leave." *Id.* (quoting *United States v. Phillips*, 812 F.2d 1355, 1360 (11th Cir. 1987)). The "reasonable person" under this analysis is a reasonably innocent person. *Moya*, 74 F.3d at 1119.

In applying the totality of the circumstances "test there are several factors [courts] are to consider, including whether 'the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance with the officers could be compelled.' " *United States v. Street*, 472 F.3d 1298, 1309 (11th Cir. 2006) (quoting *United States v. Long*, 866 F.2d

402, 405 (11th Cir. 1989)). Also considered are the duration of the questioning, "statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." *Howes v. Fields*, 565 U.S. 499, 509 (2012) (internal citations omitted). Additionally, the location of the questioning is a relevant consideration, and "courts are *much less likely* to find the circumstances custodial when the interrogation occurs in familiar or at least neutral surroundings, such as the suspect's home.'" *United States v. Matcovich*, 522 F. App'x 850 (11th Cir. 2013) (quoting *United States v. Brown*, 441 F.3d 1330, 1348 (11th Cir. 2006) (emphasis in *Brown*)). Another "powerful factor" considered by courts is "whether a defendant was 'unambiguously advis[ed] . . . that he [wa]s free to leave and [wa]s not in custody." *Id.* (citing *Brown*, 441 F.3d at 1347). Where the defendant was so advised, courts will generally conclude "that the defendant [wa]s *not* in custody absent a finding of restraints that [were] so extensive that telling the suspect he was free to leave could not cure the custodial aspect of the interview." *Id.* (quoting *Brown*, 441 F.3d at 1347) (emphasis in *Brown*).

The Government does not dispute that Blank was not provided with the *Miranda* warnings. The dispute here revolves around whether Blank was subjected to a custodial interrogation that required law enforcement to advise him of the rights safeguarded by *Miranda* prior to any questioning. "[P]re-custodial questioning does not require *Miranda* warnings." *United States v. Street*, 472 F.3d 1298, 1309 (11th Cir. 2006) (citing *United States v. Brown*, 441 F.3d 1330, 1347-49 (11th Cir. 2006)). "While the burden is on the Government to show that a defendant's in-custody statements were voluntary and obtained in compliance with *Miranda*, the burden is on the defendant to establish that he was in custody and the statements were made in response to government questioning." *United States v. Aldissi*, No. 8:14-CR-217-T-33EAJ, 2015 WL

1268284, at *3 (M.D. Fla. Mar. 19, 2015) (internal citations and footnote omitted), *appeal docketed*, No. 15-14193 (11th Cir. Sept. 21, 2015); *see also United States v. Peck*, 17 F. Supp. 3d 1342, 1354 (N.D. Ga. 2014) (citing *United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977)).

Considering the facts of this case and applying the objective reasonable person test, the Court finds that Blank was not in custody during the interview. Notably, Blank does not dispute that he was advised that he was not under arrest, and the interview occurred at Blank's office—a place of familiarity for him. Tr. 60:22-24, 64:2-3; 70:23. Moreover, Blank testified that the officers did not brandish their weapons, threaten him in any way with their weapons, or act aggressively during the interview. *Id.* at 67:13-68:12, 74:9-15. Blank was not restrained. Further, before the interview, Blank was advised that he was free to leave at any time and the interview was voluntary. Blank did not indicate a desire to end the interview. Additionally, Blank was not arrested at the end of the interview. *Id.* at 18:15.

Courts have repeatedly found that the presence of armed officers at the search location and requiring a suspect to be accompanied around the premises does not escalate an interrogation to a degree that makes it custodial. *United States v. Perry*, No. 1:16-CR-00334-MHC-LTW, 2017 WL 9473406, at *3 (N.D. Ga. Aug. 4, 2017), *adopted by*, 2017 WL 4031469 (N.D. Ga. Sept. 13, 2017) (finding that a defendant was not in custody despite being awoken at his home by armed law enforcement agents clad in full swat gear, required to remain outside of his house while an officer retrieved a drink, and escorted to and monitored in the restroom because the defendant was advised that he was not under arrest and free to leave and the interrogation occurred at his home); *United States v. Matcovich*, No. 2:12-cr-7-FtM-29DNF, 2012 WL 2115444, at *9 (M.D. Fla. May 7, 2012), *adopted by*, 2012 WL 2115490 (M.D. Fla. June 11, 2012), *aff'd*, *Matcovich*, 522 F. App'x

at 852 (finding that the defendant was not in custody despite the existence of a police dominated atmosphere, the defendant being required to remain in a bedroom while an officer obtained cigarettes for him, and an officer escorting the defendant to the restroom and monitoring him in the restroom, because the location was familiar to the defendant and the defendant was advised that he was not under arrest and free to leave). Courts have also found that interviews of approximately two and a half hours are not custodial, *Muegge*, 225 F.3d at 1269, 1271, and have found a defendant not to be in custody even where an officer stood between the defendant and the exit, *United States v. Oddo*, 133 F. App'x 632, 634 (11th Cir. 2005).

Blank's testimony that Cumming used a forceful voice when indicating that Blank needed to speak with law enforcement is not sufficient to overcome Cumming's express statements that Blank was not under arrest, that Blank was free to leave at any time and that the interview was completely voluntary. Considering the totality of the circumstances, Cumming's statements, coupled with the familiarity of the location, the calm tone of the interview, the lack of restraints, and the fact that Blank was not arrested until months later, it is clear that Blank was not in custody on December 13, 2017. A reasonable man in Blank's position would not have felt a restraint on his freedom of movement, such as that associated with a formal arrest, to such extent that he would not feel free to leave. Although the guns, badges, and vests may have subjectively rattled Blank and made Blank feel compelled to answer, an objectively reasonable person would have felt free to leave, considering the totality of the circumstances.

## III. CONCLUSION

Having conducted an evidentiary hearing on Blank's Motion to Suppress, and having considered the legal arguments of the parties, the Court finds that Blank was not in custody at any

point on December 13, 2017, when he spoke with law enforcement at the Munce office while the search warrant was being executed.

Accordingly, it is hereby

**ORDERED:**

1. Defendant Kirk David Blank's Motion to Suppress Statements and for an Evidentiary Hearing (Doc. 21) is **DENIED.**

**DONE AND ORDERED** in Tampa, Florida on October 9, 2018.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any